STATE OF CONNECTICUT *v.* CARLOS GONZALEZ
(13055)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued January 13—decision released March 1, 1988

*Jean Elmblad Blue,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Mary Galvin,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue on this appeal is whether the defendant, Carlos Gonzalez, has established that the prosecutor discriminatorily employed peremptory challenges to exclude Hispanics from the jury that convicted him of the crime of murder in violation of General Statutes § 53a-54a (a).[1] The defendant appeals from the judgment rendered by the court in accordance with the verdict of the jury.

The jury could reasonably have found the following facts. On September 27, 1985, the defendant was a prisoner at the community correctional center in New Haven. The defendant used a handmade weapon known as a shank to stab the victim, a fellow inmate named Dennis Artis, in the day room of the correctional center. The victim was taken to a hospital and died shortly thereafter.

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

At trial, the defendant admitted having killed the victim but denied having had the requisite criminal intent. On appeal, the defendant does not challenge the sufficiency of the evidence against him on that issue, but raises two claims of error. He maintains that he is entitled to a new trial because the trial court erred in ruling that: (1) the prosecutor's use of peremptory challenges was not discriminatory, and (2) a pathologist could give an expert opinion about the interpretation of an autopsy report that he had not prepared. We find no error.

I

In order to review the trial court's ruling with regard to the prosecutor's challenges to the venirepersons called to try the defendant, we must examine the factual record of the jury selection process in this case. The defendant is Cuban, while his victim was black. Fourteen jurors, including two alternates, were selected from a panel of forty-one venirepersons. The trial court excluded ten prospective jurors, including one of Puerto Rican background, for cause. The defendant exercised his peremptory challenges to exclude nine jurors, including three who were black. The state exercised its peremptory challenges to exclude eight jurors, including two of Puerto Rican background. The jury that convicted the defendant included no Hispanics. The record fails to indicate whether it included any black persons.

The defendant maintains that he was deprived of a fair trial, in violation of rights guaranteed to him by the equal protection clause of the fourteenth amendment to the constitution of the United States, because of purposeful racial discrimination in the selection of the petit jury that convicted him.[2] The recent decision

---

[2] Because the defendant makes no claim that article first, § 8, of the Connecticut constitution affords him additional protection from discriminatory

of the United States Supreme Court in *Batson* v. *Kentucky,* 476 U.S. 79, 86–87, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), emphasizes that such a claim raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole.

*Batson* v. *Kentucky,* supra, reaffirms that the federal constitutional right to equal protection encompasses the right to question prosecutorial use of peremptory challenges. See *Swain* v. *Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965). "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [Hispanic] jurors as a group will be unable impartially to consider the State's case against [an Hispanic] defendant." *Batson* v. *Kentucky,* supra, 89.

In *Swain* v. *Alabama,* supra, 224, the United States Supreme Court held that a defendant must prove a sys-

jury selection, our decision today rests on federal grounds. We note that the holding in *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), involves the guarantee of equal protection of the laws in the fourteenth amendment to the United States constitution. Various state courts have held under their constitutions that the independent right to trial by an impartial jury drawn from a representative cross-section of the community is violated by the discriminatory exercise of peremptory challenges. *People* v. *Wheeler,* 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978); *Riley* v. *State,* 496 A.2d 997, 1012 (Del. 1985), cert. denied, 478 U.S. 1022, 106 S. Ct. 3339, 92 L. Ed. 2d 743 (1986); *State* v. *Neil,* 457 So. 2d 481, 486 (Fla. 1984); *Commonwealth* v. *Soares,* 377 Mass. 461, 486, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S. Ct. 170, 62 L. Ed. 2d 110 (1979); *State* v. *Gilmore,* 103 N.J. 508, 522, 511 A.2d 1150 (1986); *State* v. *Crespin,* 94 N.M. 486, 488, 612 P.2d 716 (1980). At least one federal Circuit Court of Appeals has reached a similar result under the sixth amendment to the United States constitution. *McCray* v. *Abrams,* 750 F.2d 1113, 1124–34 (2d Cir. 1984).

tematic exclusion of members of a racial group from the petit jury to establish a constitutional violation. *Batson* modifies this burden of proof. A defendant is no longer required to prove that the peremptory challenges are being exercised to deny equal protection in "case after case"; id., 223; but, under *Batson,* "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson* v. *Kentucky,* supra, 96.

*Batson* delineates the process by which claims of discriminatory peremptory challenges are to be adjudicated. The defendant carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination. Id., 94 n.18. As in other litigation involving allegations of racial discrimination, the adjudication of claims of discrimination in the selection of the petit jury normally proceeds through two stages. A defendant who is a member of a cognizable racial group must first establish a prima facie case of purposeful discrimination. Id., 96–97. Once that threshold has been crossed, the burden of production shifts to the state to advance a neutral explanation for its peremptory challenges of jurors of the defendant's race. Id., 97. At this juncture, the defendant has an opportunity to show that the articulated reasons are insufficient or merely pretextual. "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility"; id., 98 n.21; a trial court's determination that there has or has not been intentional discrimination is "entitled to appropriate deference" upon review on appeal. Id.

We now turn to the first stage of the *Batson* inquiry. The defendant must establish by a preponderance of

the evidence a prima facie case of purposeful discrimination. See *Texas Department of Community Affairs* v. *Burdine,* 450 U.S. 248, 252–53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *Batson* defines how this burden may be satisfied. "[T]he defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery* v. *Georgia,* [345 U.S. 559, 562, 73 S. Ct. 891, 97 L. Ed. 1244 (1953)]. Finally, the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."[3] *Batson* v. *Kentucky,* supra, 96.

In this case, the defendant, as an Hispanic, was a member of a racially cognizable group. *Castaneda* v. *Partida,* 430 U.S. 482, 495, 97 S. Ct. 1272, 51 L. Ed.

---

[3] The United States Supreme Court has clarified the function of the prima facie case in the context of adjudication under title VII: "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " *Texas Department of Community Affairs* v. *Burdine,* 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), quoting *Furnco Construction Corporation* v. *Waters,* 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). "Prima facie case" in this context denotes "the establishment of a legally mandatory, rebuttable presumption," in contrast to other contexts in which the phrase represents the stage at which a litigant has produced sufficient evidence to permit a trier of fact to infer the fact at issue. *Texas Department of Community Affairs* v. *Burdine,* supra, 254 n.7. "[I]n the latter sense, [the term] means merely that the proponent is safe in having relieved himself of his duty of going forward, while in the former sense it signifies that he has further succeeded in creating it anew for his opponent." 9 J. Wigmore, Evidence (Chadbourn Rev. 1981) § 2494; cf. *Berchtold* v. *Maggi,* 191 Conn. 266, 270–71, 464 A.2d 1 (1983).

2d 498 (1977); see *Hernandez* v. *Texas,* 347 U.S. 475, 479–80, 74 S. Ct. 667, 98 L. Ed. 866 (1954). He preserved his right to challenge the discriminatory nature of the removal of all Hispanics from his petit jury by his timely objection to their removal, and his motions for the dismissal of the jury panel in its entirety. The trial court impliedly ruled that the defendant had raised a reasonable inference of discrimination when the court asked the prosecutor to articulate neutral reasons for her peremptory challenges. See *Batson* v. *Kentucky,* supra, 96–97.

The state now asks us to review the merits of the trial court's ruling, even though at trial the prosecutor complied with the trial court's request to articulate her neutral reasons without then indicating any reservation about its propriety. The state argues, first, that the trial court's request for the prosecutor's articulation was not the functional equivalent of a finding of a prima facie case, and second, that the record does not support the making of such a finding. We disagree. The state's acquiescence at trial in the inquiry proposed by the trial court may reasonably have been understood by all of the parties as a concession that the defendant had succeeded in raising an inference of a discriminatory prosecutorial purpose. Under these circumstances, the trial court should be deemed to have made the finding that was implicit in its request to the prosecutor. See *People* v. *Turner,* 42 Cal. 3d 711, 719, 726 P.2d 102, 230 Cal. Rptr. 656 (1986). Furthermore, a finding of a prima facie case is a mixed finding of fact and law. If the state harbored doubts about the underpinnings of this finding, it was its responsibility, as the appellant on this issue, to provide a record that would permit orderly appellate review. Practice Book § 4061; *J. M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 376, 528 A.2d 786 (1987); *DeMilo* v. *West Haven,* 189 Conn. 671, 681, 458 A.2d 362 (1983).

We turn then to the second stage of the *Batson* analysis, an examination of the neutral reasons advanced by the prosecutor for her peremptory challenges to two Hispanic jurors on the venire.[4] *Batson* requires a prosecutor, after a prima facie showing of discrimination, to give a clear, neutral and reasonably specific explanation of the state's reasons for exercising such a challenge. *Batson* v. *Kentucky,* supra, 97–98. The purpose of requiring an articulation of neutral reasons is to dispel the inference of discrimination raised by the defendant's prima facie case. While reliance on intuitive judgment or an affirmation of good faith is insufficient, the explanation need not rise to the level of a finding of cause to disqualify. Id., 97.[5]

Once the prosecutor has advanced reasons for the exercise of the peremptory challenges at issue, the defendant has an opportunity to show that they are insufficient or merely pretextual. *United States* v. *Davis,* 816 F.2d 433, 434 (8th Cir. 1987). While *Batson* does not address the problem of pretext, other courts

[4] The defendant has not challenged the validity of the trial court's ruling excusing one of the Hispanic members of the venire for cause. This juror, who was of Puerto Rican background, was excused because of linguistic difficulties. She also had indicated that she would be reluctant to convict an Hispanic defendant.

[5] To clarify the difference between the lesser burden imposed by *Batson* and the traditional "for cause" standard, we can usefully draw upon an analogy to the law of *Terry* stops. Under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a police officer's justification for the investigative stop of a suspect need not rise to the level of probable cause; see id., 26–27; *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987); rather, it is sufficient if the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry* v. *Ohio,* supra, 21; *State* v. *Aillon,* supra. By the same token, to rebut an inference of discrimination, a prosecutor must articulate a neutral explanation related to the particular case to be tried. *Batson* v. *Kentucky,* 476 U.S. 79, 97–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); see also *Texas Department of Community Affairs* v. *Burdine,* 450 U.S. 248, 258, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

have discussed the types of evidence that are salient to a showing of pretext. See, e.g., *Ex parte Branch,* 526 So. 2d 609 (Ala. 1987); *People* v. *Wheeler,* 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978); *Slappy* v. *State,* 503 So. 2d 350, 355 (Fla. App. 1987). The following examples are by no means exhaustive: (1) The reasons given for the challenge were not related to the trial of the case; *Ex parte Branch,* supra, 624; *Slappy* v. *State,* supra; (2) the prosecutor failed to question the challenged juror or only questioned him or her in a perfunctory manner; *Slappy* v. *State,* supra; *Ex parte Branch,* supra; (3) prospective jurors of one race were asked a question to elicit a particular response that was not asked of the other jurors; *Ex parte Branch,* supra; *Slappy* v. *State,* supra; (4) persons with the same or similar characteristics but not the same race as the challenged juror were not struck; *Ex parte Branch,* supra; *People* v. *Turner,* supra, 725; *People* v. *Wheeler,* supra, 282; *Slappy* v. *State,* supra; (5) the prosecutor advanced "an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically"; *Slappy* v. *State,* supra; *Ex parte Branch,* supra; and (6) the prosecutor used a disproportionate number of peremptory challenges to exclude members of one race. *Ex parte Branch,* supra.[6]

To satisfy the burden of showing that the prosecution exercised its peremptory challenges in a discriminatory manner, the defendant must show by a preponderance of the evidence that, but for the prosecutor's invidious

---

[6] After the trial court has found that a defendant has made out a prima facie case and the state has articulated neutral reasons for its peremptory challenges, a defendant need not put on additional evidence to demonstrate pretext. If, however, the defendant makes a showing of a special need to call the prosecutor to the stand in order further to explore the possibility of pretext, the trial court may permit such an examination; see, e.g., *Chambers* v. *State,* 724 S.W.2d 440, 441 (Tex. Crim. App. 1987); in which event the prosecutor is entitled to the assistance of counsel. Such an examination does not automatically disqualify the prosecutor from further participation in the case because automatic disqualification would ordinarily "work substantial hardship" on the state. Rules of Professional Conduct § 3.7 (a) (3).

purpose, the juror would not have been challenged. See *Texas Department of Community Affairs* v. *Burdine,* supra, 252–53; *McDonald* v. *Santa Fe Trail Transportation Co.,* 427 U.S. 273, 283 n.10, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976). The defendant need not show that the peremptory challenge of every juror of the defendant's race was due to an impermissible motive; rather, under *Batson,* the striking of even one juror on the basis of race violates the equal protection clause, even when other jurors of the defendant's race were seated and even when valid reasons for the striking of some of the jurors of the defendant's race were shown. *United States* v. *David,* 803 F.2d 1567, 1571 (11th Cir. 1986). If the defendant is found to have sustained the burden of proof, the trial court must then dismiss the jurors thus far selected and the remaining venire, and begin anew the jury selection process. *People* v. *Wheeler,* supra, 282; *Commonwealth* v. *Soares,* 377 Mass. 461, 491, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S. Ct. 170, 62 L. Ed. 2d 110 (1979); *State* v. *Gilmore,* 103 N.J. 508, 539, 511 A.2d 1150 (1986).

Having set out the relevant principles of law, we turn now to the disputed jury selection in this case. The voir dire of the two jurors who were peremptorily stricken by the prosecutor, Carlos Martinez and Magali Kupfer, reveals that each was separately challenged for reasons that were substantially unrelated. We will accordingly review the record as it pertains to each prospective juror individually.

The prosecutor explained her decision to challenge Carlos Martinez on two grounds, that he might have a memory or a comprehension problem that was possibly related to a language problem and that he was insufficiently decisive. Defense counsel countered that the defendant and Martinez were both of Hispanic background, but did not otherwise contest the validity of the reasons given by the prosecutor. In denying the defendant's motion to impanel a new venire, the trial

court implicitly held that the prosecutor had advanced a sufficient explanation.

With respect to the ground suggesting that the juror might have difficulties of memory or comprehension, the prosecutor relied on a possible incongruity between the juror's responses to inquiries on his jury form and on voir dire questions by defense counsel. On his jury form, the juror had answered "none" to a question asking whether he had had any motor vehicle offenses or parking tickets. In a colloquy between defense counsel and the juror, however, his replies were arguably inconsistent:

"Q. Ever have any experiences with police officers in any capacity, seen them on the street or be stopped for a ticket maybe or being with somebody who had a confrontation that was unpleasant or, on the other hand, a good experience?

"A. Have they ever stopped me for a ticket?

"Q. Well, yeah.

"A. Yes.

"Q. Most people have. I appreciate your honesty. I take it that there was nothing about that experience that would impact on your ability to sit as a juror?

"A. No.

"Q. It's a common occurrence in today's society.

"A. No, I don't think so."

After Martinez was excused, the prosecutor commented that this colloquy appeared to her to indicate that he might have some difficulty in understanding questions, a problem possibly compounded by his "highly perceptible accent" and by his possible distraction by the presence of an interpreter who was assisting the Spanish-speaking defendant.

With respect to the juror's indecisiveness, the record of the voir dire indicates the following:

"[Prosecutor:] Now, the Judge also explained that the State doesn't have to prove its case beyond any and all doubt. If you're selected to sit would you be able to convict someone if you weren't absolutely certain that they had done it?

"[Juror:] I guess.

"Q. Now, this is an important question because the Judge will instruct you that beyond any and all doubt or to an absolute certainty is not the State's standard of proof and if you think you're going to require absolute certainty it's important that you tell us now. So, I mean, that's something only you can know.

"A. I think I could do it.

"Q. In other words, you think you could be satisfied with just proof beyond a reasonable doubt?

"A. Yes, I can."

On appeal, the defendant maintains that the trial court erred in permitting the prosecutor's challenge to stand. The defendant first claims that the reason advanced by the prosecutor regarding Martinez' possible memory or comprehension problem is marred by inconsistencies that reveal its pretextual nature. He argues that the prosecutor contradicted herself when she admitted later that Martinez "obviously understood the questions" during voir dire. This admission, according to the defendant, amply rebuts any suggestion that Martinez had a comprehension problem. The defendant also argues that the affirmative answer Martinez gave during voir dire to the question of whether he had been "stopped for a ticket" did not necessarily contradict his negative answer to the jury form, which had asked whether he had any motor vehi-

cle offenses. According to the defendant, the two questions differed, and therefore deserved different answers, because the voir dire question asked only whether he had been "stopped," not actually ticketed. The defendant claims that Martinez was challenged in reality because, in the words of the prosecutor, he had a "highly perceptible accent."

In making this claim, the defendant does not seriously dispute that a prosecutor may legitimately remove jurors who seem not fully to understand trial proceedings. *Baynard* v. *State,* 518 A.2d 682, 685–86 (Del. 1986); *Chambers* v. *State,* 724 S.W.2d 440, 442 (Tex. Crim. App. 1987). The defendant instead appears to claim that the record as a whole demonstrates that the proffered reasons are merely pretextual. From our vantage point, it is extremely difficult to evaluate the merits of this argument. In arguing the motion to impanel a new venire, defense counsel did not elaborate his claim of pretext as he now does, and, as a result, the trial court was not called upon to rule on the issue specifically. While the prosecutor's focus on the juror's accent raises the spectre of an illicit motive at work, the defendant has failed to supply us with an adequate record. Because the defendant did not elicit proper factual characterizations from the trial court on the question of pretext, we are without a decision of the trial court to review. In the final analysis, the burden of proof remained with the defendant to establish purposeful discrimination. Accordingly, we conclude that there is no basis for finding error with respect to this claim of pretext.

As to the second reason advanced by the prosecution, the defendant, while not disputing that the prosecutor could reasonably have believed that Martinez equivocated on the question of proof, claims that juror indecision alone is not a sufficiently specific reason for challenging a prospective juror. According to the

defendant, only by connecting the general infirmity of indecision to the specific facts of the case could the prosecutor have provided a reasonably specific explanation of her legitimate purpose. We disagree.

In *Batson,* the United States Supreme Court stated that the neutral explanation given by the prosecutor must relate "to the particular case to be tried." *Batson* v. *Kentucky,* supra, 98. We decline to read this language as narrowly as the defendant urges. It is no doubt true that some neutral reasons for exercising peremptory challenges will implicate the specific nature of the case to be tried. Just as frequently, however, the prosecutor may believe that a particular juror is unfit for duty because of an infirmity relating to his or her general status as a discerning observer of trial activity. See, e.g., *United States* v. *Cartlidge,* 808 F.2d 1064, 1071 (5th Cir. 1987) (upholding decision to remove member of venire who avoided eye contact with the prosecutor); *United States* v. *Ratcliff,* 806 F.2d 1253, 1256 (5th Cir. 1986), cert. denied, 481 U.S. 1004, 107 S. Ct. 1265, 95 L. Ed. 2d 199 (1987) (affirming peremptory removal of venireperson who fell asleep during jury selection). In the absence of a demonstration that the general status of a juror is merely a pretext for racial bias, *Batson* appears not to distinguish between reasons that might arise in only one case and those that tend to recur in all criminal cases. The prosecutor clearly may not, however, rely on a characteristic that is associated with a racial group, for, as the Massachusetts Supreme Judicial Court has observed, the "reason must pertain to the individual qualities of the prospective juror and not to that juror's group association." *Commonwealth* v. *Soares,* supra, 491.

In this case, the prosecutor was concerned that juror Martinez, in his voir dire, displayed an indecisive or equivocal commitment to the prevailing standard of proof beyond a reasonable doubt. This explanation, if

adequately substantiated, satisfies *Batson* because a prosecutor has a legitimate interest in obtaining jurors who will faithfully adhere to the governing burden of proof. *People* v. *Chambie,* 189 Cal. App. 3d 149, 156–57, 234 Cal. Rptr. 308 (1987); *People* v. *Peters,* 144 Ill. App. 3d 310, 321, 494 N.E.2d 853 (1986). The record in this case indicates that the trial court shared the prosecutor's concern. After the prosecutor challenged Martinez, defense counsel objected and moved to impanel a new venire. In a colloquy with both counsel, the trial court remarked: "I heard some responses [during the voir dire of Martinez] with respect to the questions on burden of proof which might cause a prosecutor to hesitate before accepting a juror." Given this affirmative observation by the trial court, we conclude that the record supports its decision that the prosecutor had sufficiently articulated the neutral reason of juror indecisiveness. The trial court did not err in denying the defendant's motion to dismiss the panel after the prosecutor's peremptory challenge to Martinez.

We turn next to the prosecutor's reasons for excusing Magali Kupfer. The first reason was that she belonged to a community organization that had competed for funds with another organization with which the prosecutor was affiliated and that Kupfer had attended a public hearing at which the prosecutor had spoken on behalf of her group. Although Kupfer stated that she had no recollection of meeting or seeing the prosecutor, the prosecutor was concerned that she would recall the connection during the trial. The second reason was Kupfer's involvement with a pretrial diversion program for juvenile offenders. The prosecutor was concerned that this involvement would make it difficult for her, sitting as a juror, not to consider the punishment to which the defendant would be exposed. Because we conclude that either of these reasons was a valid basis for challenging Kupfer, we do not consider the other reasons advanced by the state.

In the trial court, defense counsel attempted to expose the proffered reasons as pretextual. He argued with regard to each reason that it was not necessarily relevant to Kupfer's capacity to be objective and follow the court's instructions, which she unhesitatingly affirmed throughout the voir dire. As to Kupfer and the prosecutor having attended the same meeting, defense counsel emphasized Kupfer's failure to remember the prosecutor. As to Kupfer's role in the pretrial diversion program, defense counsel noted that people with knowledge of the criminal justice system had often served on juries.

The trial court concluded that the reasons advanced by the prosecution for its challenge to Kupfer were valid and accordingly denied the defendant's motion to dismiss the panel. While the court stated that the prosecution did not have a basis for excusing Kupfer for cause, it found that Kupfer's involvement in a pretrial diversion program for youthful offenders was a reasonable basis for a peremptory challenge. The court also noted the prosecutor's concern regarding Kupfer's connection with an organization competing for funds with another organization with which the prosecutor was associated and her attendance at a meeting at which the prosecutor had attempted to solicit funds for her own group.

On appeal, the defendant repeats the arguments that he had pressed in the trial court. In addition, he contends that the prosecutor's acceptance of another juror, George Paradis, who had served as court martial officer in the navy, exposes the pretextual nature of the prosecutor's explanation that she had challenged Kupfer because of her experience with the criminal justice system. We are not convinced.

We reiterate that the trial court's determination that the prosecutor's reasons were valid is entitled to great

deference. From our review of the record, we conclude that it amply supports the trial court's finding. During voir dire, Kupfer testified that she currently sat on a board that devised appropriate community service sentences for first time offenders. While Kupfer stated that this experience would not influence her participation as a juror in the case at hand, the prosecutor could reasonably have believed that Kupfer's involvement with the program might interfere with her impartiality in a way that Paradis' experience in the navy as court martial defense counsel, trial counsel and summary court martial officer would not. In addition, Kupfer testified that she had attended a hearing a few months earlier at which a large number of organizations, including her own, had sought funding from a community block grant. She did not remember hearing anyone who was in the courtroom speak at the meeting. After Kupfer had been excused, the prosecutor represented to the trial court that she was on the advisory board of a program that competes with other community groups for funding, and that she had spoken at the hearing to solicit funds for her group. Under the circumstances, the prosecutor's concern that, during the trial, Kupfer would remember the prosecutor's role at the meeting and might be biased against her was sufficiently reasonable as not to be pretextual. We conclude that either of these two reasons alone justified the prosecutor's use of a peremptory challenge against Kupfer and accordingly that the trial court did not err in denying the defendant's motion to dismiss the panel.

## II

The defendant next claims that the trial court erred in admitting an autopsy report and in permitting a pathologist to testify about its contents. We find no error.

When the case went to trial, the pathologist who had prepared the autopsy report on the victim, Dr. Malka Shah of the office of chief medical examiner, was out of the country. The state offered the autopsy report into evidence, under the business records exception to the hearsay rule, through the testimony of Dr. Arkady Katsnelson, a pathologist employed by the same office. Defense counsel expressly declined to object to the admission of the report.

On appeal, the defendant first claims that the autopsy report was improperly admitted into evidence under the standards laid down in *State* v. *Cosgrove,* 181 Conn. 562, 436 A.2d 33 (1980). He argues that the autopsy report lacked sufficient indicia of reliability to pass muster as a business record because its ultimate conclusion on the cause of death was the product of subjective evaluation. We decline to review this claim, however, because the defendant consented to the admission of the report at trial and hence waived any objection. Practice Book § 4185.

The defendant also appears to maintain that it was error for the trial court to permit Katsnelson to give opinion testimony based on the autopsy report. The defendant raises no confrontation clause claim and does not challenge Katsnelson's qualifications as an expert. "In these circumstances, the ruling by the trial court is consistent with the accepted principle that an expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion." *State* v. *Cosgrove,* supra, 584. The defendant extensively cross-examined Katsnelson and by this means was able to put before the jury the question of the credibility of the witness. It was within the province of the trier of fact to assign as much weight to the testimony of Katsnelson as it

saw fit. *State* v. *Girolamo,* 197 Conn. 201, 215, 496 A.2d 948 (1985).

There is no error.

In this opinion the other justices concurred.