[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONre DEFENDANT'S MOTION FOR ALLOCUTION OF SENTENCING (sic)
The defendant was convicted on June 27, 1995, after a trial before a jury of six, of larceny in the first degree by defrauding a public community, a violation of Sec. 53a-122(a)(4) of the Connecticut General Statutes. The victim was the Social Services Department of the City of Meriden, and the sum which the defendant fraudulently obtained was $5,518.46.
Following acceptance of the verdict the court ordered a pre-sentence investigation and report and continued the case for sentencing on July 21, 1995.
On July 12, 1995, the defendant filed a motion for judgment of acquittal pursuant to Section 899 of the Practice Book. The basis of the motion was the defendant's claim that the evidence offered at trial was insufficient to convict him beyond a reasonable doubt. On July 21 the court considered oral arguments on the motion, and the motion was denied.
Before proceeding to sentencing the court inquired whether the defendant had any other motions to present. The defendant orally moved for an order requiring a new pre-sentence investigation and report because of expressed dissatisfaction with the quality of the investigation and contents of the report. The motion was denied. Thereupon, the defendant filed a written motion, entitled "Motion for Allocution of Sentencing." When questioned as to what was meant or intended by the motion, the defendant's response seemed to suggest his desire that all proceedings be dismissed or a mistrial declared and that no CT Page 9065 sentence be imposed. It is this motion, which contains twenty-four claimed violations of the defendant's "due process rights," which the court feels constrained to address in this memorandum. Accordingly, sentencing was continued to a later date.
1. The defendant asserts that he was notified on May 19, 1995 that his case was assigned for trial on May 31, 1995. Trial actually commenced with jury selection on June 1, 1995. Prior thereto, Attorney Michael Moscowitz had been appointed special public defender to represent the defendant, and he continued in that capacity until June 1, 1995.[1]
Attorney Moscowitz is an experienced and competent criminal defense lawyer who has appeared before this court on many past occasions, which include jury trials to conclusion. Attorney Moscowitz was prepared to represent the defendant at trial, as he had done in a prior criminal proceeding.
On May 31, 1995, the defendant maligned and insulted Attorney Moscowitz in the courtroom, demanding the appointment of another public defender to represent his interests. Although the defendant charged Attorney Moscowitz with incompetence, it was the court's conclusion that there was no merit to the claim.
The court informed the defendant that it would not appoint a new public defender and urged him to reconsider his demand and allow Attorney Moscowitz to conduct the defense. The defendant refused and expressed his wish, therefore, to represent himself.
The defendant, who might well be described as a street-wise, jailhouse lawyer, from his own criminal court experience has more than a working knowledge of the justice system and how it functions. The criminal file and record reveal no claim by the defendant that he was other than competent to stand trial and, applying the same standard; State v. Day, 233 Conn. 813, 823-24
(1995); it was the court's finding that he was competent to waive counsel assigned to him. Before making such decision, ill-conceived though it may have been, the defendant was made fully aware that appointment of another public defender was not an option available to him. Nonetheless, the court is satisfied that the defendant knowingly made his choice with an understanding of the assumed risks. Id., 829.
The court is persuaded that its inquiry and the responses of the accused, in the context of the understanding he possessed, CT Page 9066 was sufficiently thorough to satisfy the applicable criteria; Id., 822; P.B., Sec. 961; thereby effecting a knowing, voluntary, and intelligent waiver.
Accordingly, the court acceded to the defendant's request, appointed Attorney Moscowitz as stand-by counsel, and advised the defendant that Attorney Moscowitz would be in attendance throughout the trial to assist him in any reasonable way requested.[2]
2. Before the start of jury selection and on other occasions during the trial, the defendant moved that this trial judge recuse himself on the basis of alleged prejudice toward the defendant. The motions in each instance were denied as being without merit and quite probably advanced as part of an effort to delay proceedings.
The court was not prejudiced and did all that was reasonably required to assure the defendant the fair trial which he received. The fact that the court on prior dates during the term presided at a misdemeanor criminal trial and an eviction proceeding, both involving the defendant, did not influence the court in any way adverse to the defendant or his due process rights.
3. It was brought to the court's attention that in the detention area of the Courthouse building, before commencement of proceedings on May 31, 1995, the defendant was unruly, obstreperous, and at one point involved in a physical altercation. When brought to the courtroom he was handcuffed and in leg shackles. The defendant was loud, disrespectful, and menacing.
While in the courtroom on the following day before introduction of the case to the jury panel, the defendant maintained his surly and threatening demeanor while asking to be released from his restraints. The assistant state's attorney to whom the case was assigned for trial was apprehensive and expressed concern were the court to grant the defendant's request. The court shared the concern and conferred in chambers with Captain Edward Leonard, sheriff in command at the Meriden Courthouse. Captain Leonard agreed that there was cause for concern and recommended that the restraints remain.
It was the court's finding that under all of the CT Page 9067 circumstances the restraints were reasonably necessary; State v.Robinson, 38 Conn. App. 598, 603 (1995); and the defendant's request for removal thereof was denied.
The defendant who was not in prison garb participated in jury selection questioning each venireman at length. He made no effort to conceal his shackles. Not only did the defendant examine while in close proximity to each prospective juror[3], he called attention to his shackles, questioning the venireman on his or her opinion regarding the fairness of the restraints and fact that, although not a lawyer, he was required to represent himself. To say the least, he was uninhibited by his restraints during the jury selection process.
It was patently clear that the defendant chose to use his restraints and pro se status to curry favor with all who were questioned and to elicit their sympathy. The court repeatedly instructed the jury during the voir dire examination and in its charge in accordance with the requirements of Section 892 of the Practice Book.
The restraints were removed following jury selection and before the evidentiary hearing. By that time the defendant's conduct had become less threatening. He participated fully in his defense, examining and cross-examining all, or almost all, of the witnesses who were called to testify.
4. The defendant asserts that he was not allowed sufficient access to the law library facilities at the New Haven Correctional Center where he is currently a sentenced inmate. When this issue was raised, the court personally contacted and spoke by telephone with Deputy Warden Jones. Warden Jones informed the court that the defendant, who was well-known to him, had requested, and been granted, permission for access to the law library on four or five occasions during the period the subject case was pending. On each occasion the defendant failed (or refused) to take advantage of the permission given to him. Warden Jones stated that access would still be allowed, provided the defendant submitted a signed written request. There was no indication that the defendant had indicated the need for, or requested the use of, a typewriter.
5. On June 20, 1995, the defendant requested a continuance of the evidentiary hearing because, as represented, his allergies were troubling him and he was unable to participate. Before CT Page 9068 acting on the request the court contacted the office of the assistant of the medical unit at the New Haven Correctional Center. The court was informed that the defendant was not receiving medication, had made no request therefor, and had not disclosed that he was ill before being transported to the Courthouse. His request for a continuance was denied.
The defendant participated fully in the June 20 hearing and showed no outward signs of illness. In the view of the court his continuance request was a further stalling tactic.
6. Very few side bar conferences occurred during the trial. The majority of those held were at the request of Attorney Moscowitz with apparent acquiescence of the defendant. The court recalls no request by the defendant to participate therein or any claim that he was prejudiced by non-participation. In point of fact, he was not prejudiced, matters discussed, for the most part, being procedural or of an administrative nature.
7. If the court, on June 26, 1995, admonished the defendant "in a loud voice while the jury was present," as claimed, such action occurred at a time when the defendant, resorting to earlier behavior, was himself loud and disrespectful and indulging in statements and/or accusations which threatened the fairness of the trial.
8. The defendant received an abundance of consideration from Attorney Moscowitz and the court in the summoning of witnesses at state expense to testify in his defense. In all, the defendant called eighteen witnesses to testify.
Twelve witnesses, who can be classified as disinterested, gave little or no testimonial evidence relevant and material to the issues to be decided. The testimony of three officers of the Meriden Police Department was unhelpful to the defendant's defense. Three witnesses, two of whom were close relatives, offered peripheral testimony, bearing only generally on the defendant's background and character.
Other police officers whom the defendant claims he wished to call were either unavailable or otherwise unreachable by subpoena. The defendant at no time represented that any such police officer would offer testimonial evidence critical (or even helpful) to his defense. CT Page 9069
9. The remaining claims of the defendant in part concern post-trial complaints, not relevant to the fairness of the trial itself and more appropriately addressed to the Department of Correction; or are based on inaccuracies, misstatements of fact, or untruths. None of such claims merits the kind of action which the defendant's motion seems to request.
For all of the foregoing reasons, the defendant's motion is denied.
Gaffney, J.