STATE OF CONNECTICUT *v.* SHAWN ROBINSON
(15313)

Peters, C. J., and Callahan, Berdon, Norcott and Katz, Js.

Argued March 27—officially released June 4, 1996

*Deborah DeHart Cannavino*, with whom were *William H. Narwold* and, on the brief, *Temmy Ann Pieszak*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, assistant state's attorney, for the appellee (state).

PETERS, C. J. Federal and state constitutional law prohibit peremptory challenges of jurors if such challenges are racially motivated. The principal issue in this certified appeal is the identification of the point in time during the jury selection process at which a litigant must voice an objection to a peremptory challenge that allegedly was based on race. After a jury trial, the defendant, Shawn Robinson, was convicted of two counts of assault in the second degree in violation of General Statutes (Rev. to 1987) § 53a-60.[1] The trial court rendered judgment in accordance with the jury verdict, and the defendant appealed to the Appellate Court. The Appellate Court remanded the case for further proceedings to determine whether the defendant had raised a timely objection to the state's peremptory challenge of a venireperson. *State* v. *Robinson*, 38 Conn. App. 598, 662 A.2d 1295 (1995). We granted the defendant's peti-

---

[1] General Statutes (Rev. to 1987) § 53a-60 provides in relevant part: "Assault in the second degree: Class D felony. (a) A person is guilty of assault in the second degree when . . . (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member. . . ."

tion for certification to appeal.[2] We reverse the judgment of the Appellate Court and remand the case to that court with direction to remand to the trial court for a new trial.

The defendant has not challenged, either in the Appellate Court or in this court, the sufficiency of the evidence to sustain his convictions for assault in the second degree. The jury reasonably could have found, beyond a reasonable doubt, that, while the defendant was an inmate at the Manson Youth Correctional Facility in Cheshire, he struck and intentionally caused physical injury to two correctional officers who were engaged in the performance of their duties.

The only issue before us is the defendant's claim that, in selecting the six person jury that convicted him of these assaults, the state improperly used its peremptory challenges in a racially discriminatory manner. The opinion of the Appellate Court describes the relevant facts. "Of the first thirty-eight venirepersons called for jury selection,[3] three were black. One of those three was excused by the court for hardship, and the other two, Lisa Spruill and Melvin Perry, were excused by the state through the use of peremptory challenges.

"Spruill was the second person voir dired and Perry the thirty-eighth person voir dired. The defendant did not object on the basis of *Batson* v. *Kentucky*, [476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)], immediately after the state used a peremptory challenge to excuse Spruill, but the defendant did object on that basis as

---

[2] We granted the defendant's petition for certification to appeal, limited to the following issue: "Whether, under the state or federal constitution, a *Batson* objection must be made immediately following the voir dire of the challenged venireperson lest it be waived?" *State* v. *Robinson*, 235 Conn. 917, 665 A.2d 609 (1995). "*Batson*" refers to *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[3] "Sixty-eight venirepersons were questioned before a jury was selected." *State* v. *Robinson*, supra, 38 Conn. App. 605 n.3.

to Spruill and Perry immediately after the state excused Perry, and moved that the entire venire panel be dismissed. When the defendant made his *Batson* claim, he asked the state to put on the record its reasons for excusing both Perry and Spruill.

"The state asserted that it [had] excused Perry for two reasons. First, the state felt that a comment made by Perry, 'it takes two to fight,' indicated that Perry would be lenient about fights and that Perry thought that no one was solely at fault for a fight. Second, the state was concerned with the fact that Perry had a fourth grade education, whereas the other jurors that had been selected had at least high school educations. The state was asked by the court if it wanted to put anything on the record as to Spruill, and the state declined, stating that the defendant had not made a *Batson* claim as to her immediately following her voir dire. The court did not require the state to put on the record its reasons for excusing Spruill.

"When the defendant requested a ruling on his motion to dismiss the venire panel because of the exclusion of both Perry and Spruill, the court stated that it was premature to rule because not enough had developed for it to be able to find any prejudice. The defendant continued to argue his claim on statistical grounds, raising the fact that the state had struck 'a hundred percent of the people in the cognizable [racial] group,' and that the state had, therefore, excused a disproportionate number of black venirepersons.

"The court found that the state's reasons for the challenge of Perry were not pretexts and inferentially that the defendant had not satisfied his burden of proof that the striking of Perry was racially motivated.[4] The court

---

[4] We do not review the propriety of the trial court's ruling that the state did not exercise its peremptory challenge improperly when it challenged Perry because that ruling is outside the scope of the certified question.

made no ruling as to Spruill because the defendant had not objected when she was excused. In short, no *Batson* hearing was held as to Spruill.

"The court never specifically ruled on the defendant's motion to dismiss the entire venire panel but implicitly denied it because it found the peremptory challenge as to Perry [had not been] racially motivated and that no *Batson* hearing was needed as to the peremptory challenge of Spruill because the defendant's claim as to her was untimely. After the trial . . . had concluded, the defendant filed a motion for a new trial based on his *Batson* claims. The court denied that motion." *State v. Robinson*, supra, 38 Conn. App. 605–606.

On the issue of law concerning the proper timing for a *Batson* challenge, the Appellate Court concluded that, in order to avoid a finding of waiver, a defendant must object to the state's use of a peremptory challenge on equal protection grounds "at that point in the voir dire proceedings when the possibility of purposeful discrimination became or should have become apparent." Id., 615. In light of this conclusion, the Appellate Court remanded this case to the trial court for a hearing to determine whether the defendant had objected in a timely manner. Id., 615–16, 621.

For future cases, the Appellate Court exercised its supervisory powers to establish a rule requiring contemporaneous notice. As articulated by the Appellate Court, the proposed contemporaneous notice procedure would require a defendant, whenever the state exercised a peremptory challenge, to alert the trial court and the state that, at some later time, the defendant might raise a *Batson* claim with reference to the propriety of that peremptory challenge. The defendant would then be required to raise a plenary claim that a peremptory challenge had not been racially neutral, as soon as he or she had become aware, or should have become

aware, of the relevant facts as they became manifest during the questioning of other potential jurors. If the defendant either did not notify the court and the state immediately of a possible future *Batson* challenge or did not pursue the *Batson* claim further as soon as he or she had grounds reasonably to have done so, the *Batson* challenge would have been deemed waived. In the absence of a waiver, the trial court would hold a hearing to determine the validity of the *Batson* claim once it had matured. Id., 617.

The defendant appeals from the Appellate Court's disposition of his *Batson* claim. He argues that any requirement that a *Batson* claim must be raised at the moment a defendant becomes aware or should become aware of a possible equal protection violation impairs his equal protection rights under the fourteenth amendment to the United States constitution.[5] Furthermore, he contends that the contemporaneous notice rule adopted prospectively by the Appellate Court would similarly fail to protect a defendant's equal protection rights. The state urges us to uphold the rulings of the Appellate Court as constitutionally adequate and protective of judicial resources. We agree with the defendant. Rather than adopt the contemporaneous notice rule, we conclude that a party has timely raised an equal protection objection to the use of a peremptory challenge if that claim is brought to the attention of the trial court before the jury has been sworn.

"In *Batson* v. *Kentucky*, [supra, 476 U.S. 79,] the United States Supreme Court recognized that a claim

---

[5] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Because the defendant has not provided a separate and distinct analysis of his equal protection claim under the state constitution, we address only his federal constitutional claim. See *State* v. *Hinton*, 227 Conn. 301, 322 n.23, 630 A.2d 593 (1993); *State* v. *Gonzalez*, 206 Conn. 391, 393–94 n.2, 538 A.2d 210 (1988).

of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 323, 630 A.2d 593 (1993); *State* v. *Smith*, 222 Conn. 1, 10–11, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992); *State* v. *Gonzalez*, 206 Conn. 391, 394, 538 A.2d 210 (1988). Since *Batson*, the court has "reaffirmed repeatedly [its] commitment to jury selection procedures that are fair and nondiscriminatory." *J.E.B.* v. *Alabama*, 511 U.S. 127, 128, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (extending holding in *Batson* to gender based peremptory challenges); see *Georgia* v. *McCollum*, 505 U.S. 42, 49–50, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992) (extending holding in *Batson* so that prosecutor may object to defendant's use of peremptory challenges); *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. 614, 628, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991) (extending holding in *Batson* to civil cases); *Powers* v. *Ohio*, 499 U.S. 400, 416, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (extending holding in *Batson* to situation in which defendant and challenged juror belong to different racial or ethnic groups).

"Once a criminal defendant asserts a *Batson* claim, the prosecution must advance a neutral explanation for the venireperson's removal. . . .[6] The defendant is then

---

[6] The procedure adopted by the United States Supreme Court in *Batson* v. *Kentucky*, supra, 476 U.S. 96–97, requires the defendant to prove a prima

afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine [as a question of fact] if the defendant has established purposeful discrimination." (Citation omitted; internal quotation marks omitted.) *State* v. *Hinton*, supra, 227 Conn. 323.

A defendant may waive his or her equal protection right to be free of improperly motivated peremptory challenges. See *State* v. *Patterson*, 230 Conn. 385, 392, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996). "As the United States Supreme Court has stated, [n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right. *Peretz* v. *United States*, 501 U.S. 923, 936–37, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), quoting *Yakus* v. *United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 2d 834 (1944)." (Internal quotation marks omitted.) *State* v. *Patterson*, supra, 393.

A defendant can be deemed, however, to have waived the equal protection right to be free of racially motivated peremptory challenges by failing to assert that right only if he or she has had access to sufficient information to support the equal protection claim. See generally *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ("waiver is ordinarily an intentional

facie case of the prosecution's discriminatory use of a peremptory challenge before the burden shifts to the state to provide a racially neutral explanation. In *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), exercising our inherent supervisory authority over the administration of justice, we dispensed with this preliminary requirement in order to provide an adequate record for review and to expedite appeals. "After the burden shifts to the state to demonstrate that its challenges were race-neutral, the defendant's *Batson* claim is treated similarly under the state and federal constitutions." *State* v. *Hinton*, supra, 227 Conn. 322 n.23.

relinquishment or abandonment of a known right or privilege"); *State* v. *Ramos*, 201 Conn. 598, 603, 519 A.2d 9 (1986) ("waiver must be accomplished with sufficient awareness of the relevant circumstances and likely consequences" [internal quotation marks omitted]). Thus, the appropriate point at which a defendant must assert a *Batson* claim depends on when, in light of our jury selection procedure, the defendant has had access to the necessary information to assert an ostensibly viable claim.[7]

In determining the time at which a defendant has access to the information that he or she needs in order to decide whether to pursue a *Batson* claim, we must consider the procedure by which a jury is selected from a venire panel.[8] Before individual voir dire commences, the members of the venire panel are sworn or affirmed. The trial court and the trial attorneys then disclose to the venire panel the names of counsel with which each of the attorneys is affiliated, the names of prospective witnesses, and other facts relevant to the general nature of the case. Practice Book § 847. The trial court then asks members of the venire panel if any of them is familiar with the people or the information just disclosed, and usually asks if there is any other reason why any of them would be unable to participate as an unbiased juror. A. Spinella, Connecticut Criminal Procedure (1985) p. 652. The trial court may excuse

---

[7] The United States Supreme Court has expressly not determined the point in time by which a criminal defendant must raise a *Batson* claim. See *Ford* v. *Georgia*, 498 U.S. 411, 423, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Batson* v. *Kentucky*, supra, 476 U.S. 99 and n.24. The court "recognized that local practices would indicate the proper deadlines in the contexts of the various procedures used to try criminal cases, and . . . left it to the trial courts, in their wide 'variety of jury selection practices,' to implement *Batson* in the first instance." *Ford* v. *Georgia*, supra, 423.

[8] The record reveals that the procedure herein outlined was followed by the trial court and the parties in this case, except that the state and the defendant were each allowed to exercise eight peremptory challenges. See footnote 10.

any prospective juror for cause. Practice Book § 847. Also, the trial court may give preinstructions to the panel in order to inform the panel of generally applicable legal concepts. See *State* v. *Figueroa*, 235 Conn. 145, 184, 665 A.2d 63 (1995).

Our constitutional and statutory law permit each party, typically through his or her attorney, to question each prospective juror individually, outside the presence of other prospective jurors, to determine the venireperson's fitness to serve on the jury. Conn. Const., art. I, § 19; General Statutes § 54-82f; Practice Book § 848.[9] After the completion of the voir dire of a particu-

[9] The constitution of Connecticut, article first, § 19, as amended by article four of the amendments, provides in relevant part: "The right to question each juror individually by counsel shall be inviolate."

General Statutes § 54-82f provides in relevant part: "Voir dire examination. In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

Practice Book § 848 provides in relevant part: "Voir Dire Examination

"Each party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judicial authority before whom such examination is held is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judicial authority from any further service upon the panel, or in such action, as the judicial authority determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of the trial."

Apparently, Connecticut is the only state in which individual voir dire of each venireperson is conducted outside the presence of the other venirepersons.

lar venireperson, a party may challenge the venireperson for cause. The court must excuse that juror if the "judge . . . is of the opinion from the examination that [the] juror would be unable to render a fair and impartial verdict . . . ." General Statutes § 54-82f; Practice Book § 848. Unless one of the parties exercises a peremptory challenge to remove the venireperson, a venireperson who has not been excused for cause must be accepted by the parties as a prospective member of the jury panel.[10] A. Spinella, supra, p. 660. The purpose of voir dire is to "facilitate [the] intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause." *Nebraska Press Assn.* v. *Stuart,* 427 U.S. 539, 602, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) (Brennan, J., concurring); see *J.E.B.* v. *Alabama,* supra, 511 U.S. 144; *State* v. *Hernandez,* 204 Conn. 377, 381, 528 A.2d 794 (1987).[11]

---

[10] Each party has a right to peremptory challenges secured by the Connecticut constitution. The constitution of Connecticut, article first, § 19, as amended by article four of the amendments, provides in relevant part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. . . ."

The number of peremptory challenges is set by statute. General Statutes § 54-82g provides: "Peremptory challenges in criminal prosecution. The accused may challenge peremptorily, in any criminal trial before the superior court for any offense punishable by death, twenty-five jurors; for any offense punishable by imprisonment for life, fifteen jurors; for any offense the punishment for which may be imprisonment for more than one year and for less than life, six jurors; and for any other offense, three jurors. In any criminal trial in which the accused is charged with more than one count on the information or where there is more than one information, the number of challenges is determined by the count carrying the highest maximum punishment. The state, on the trial of any criminal prosecution, may challenge peremptorily the same number of jurors as the accused."

Practice Book § 849 implements § 54-82g by providing: "The prosecuting authority and the defendant may challenge peremptorily the number of jurors which each is entitled to challenge by law."

[11] All states apparently either follow a variant of this jury selection method or have a "struck jury system." See *Swain* v. *Alabama,* 380 U.S. 202, 211, 217, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965); A.B.A., Standards Relating to Juror Use and Management (1993) pp. 82–83; V. Starr & M. McCormick, Jury Selection: An Attorney's Guide to Jury Law and Methods (2d Ed. 1993) § 2.12.

The procedure that attends the selection of a jury creates the possibility that a defendant may not have sufficient information to raise a *Batson* claim until late in the voir dire process. "We have identified several specific factors that may indicate that the state's excuse of a venireperson through a peremptory challenge was racially motivated. These include, but are not limited to: (1) The reasons given for the challenge were not related to the trial of the case . . . (2) the prosecutor failed to question the challenged juror or only questioned him or her in a perfunctory manner . . . (3) prospective jurors of one race were asked a question to elicit a particular response that was not asked of the other jurors . . . (4) persons with the same or similar characteristics but not the same race as the challenged juror were not struck . . . (5) the prosecutor advanced an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically . . . and (6) the prosecutor used a disproportionate number of peremptory challenges to exclude members of one race. . . . *State* v. *Gonzalez*, supra, [206 Conn. 399]. . . . *State* v. *Smith*, [supra, 222 Conn. 11]." (Internal quotation marks omitted.) *State* v. *Hinton*, supra, 227 Conn. 325. These factors require a comparison of the characteristics, the voir dire questions and the voir dire responses of the challenged venire-

---

The following is the basic pattern in the struck jury system. "A panel is brought to the courtroom equal to the number of jurors and alternates to be seated plus the total number of peremptory challenges available to the parties and the statistically projected number of those likely to be removed for cause[.] The panel is questioned as a whole by the judge and counsel with follow-up questions to individual panel members, and removals for cause are made[.] After the examination has been completed, the parties exercise their peremptory challenges 'by alternate[ly] striking . . . juror[s'] names from a list passed back and forth between counsel[.]' The jury is empanelled after all sides have passed or exercised their peremptory challenges[.] If . . . more prospective jurors remain than are needed, the unstruck names are called in the order they appear on the list until the prescribed number of jurors and alternates are seated." A.B.A., Standards Relating to Juror Use and Management, supra, pp. 82–83.

person with those of the venirepersons who were not challenged, and require knowledge of the state's use of all of its peremptory challenges.

In light of our jury selection system and the information necessary for the defendant to prevail on a *Batson* claim, we conclude that such a claim is timely, and has not been waived, if the defendant raises it at any time before the jury is sworn.[12] Our "[c]oncern for protecting to the maximum extent possible the equal protection

[12] Our decision is in accordance with decisions of the lower federal courts and our sister states. Although other courts use a somewhat different jury selection method than the one used in Connecticut ; see footnote 11; most courts consider a *Batson* claim to be timely if it is raised prior to the swearing of the jury or the dismissal of the venire. See, e.g., *McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996); *United States v. Romero-Reyna*, 867 F.2d 834, 837 (5th Cir. 1989); *Government of Virgin Islands v. Forte*, 806 F.2d 73, 75–76 (3d Cir. 1986); *United States v. Erwin*, 793 F.2d 656, 666–67 (5th Cir. 1986); *Ross v. State*, 581 So. 2d 495, 496 (Ala. 1991); *State v. Harris*, 157 Ariz. 35, 36, 754 P.2d 1139 (1988) (en banc); *Pacee v. State*, 306 Ark. 563, 567, 816 S.W.2d 856 (1991); *Tursio v. United States*, 634 A.2d 1205, 1209–10 (D.C. 1993); *State v. Castillo*, 486 So. 2d 565 (Fla. 1986); *State v. Sparks*, 257 Ga. 97, 98, 355 S.E.2d 658 (1987); *People v. Evans*, 125 Ill. 2d 50, 61–62, 530 N.E.2d 1360 (1988), cert. denied, 490 U.S. 1113, 109 S. Ct. 3175, 104 L. Ed. 2d 1036 (1989); *Simmons v. Commonwealth*, 746 S.W.2d 393, 397–98 (Ky. 1988), cert. denied, 489 U.S. 1059, 109 S. Ct. 1328, 103 L. Ed. 2d 596 (1989); *Stanley v. State*, 113 Md. 50, 69, 542 A.2d 1267 (1988); *Thomas v. State*, 517 So. 2d 1285, 1287–88 (Miss. 1987); *State v. Parker*, 836 S.W.2d 930, 935–36 (Mo.) (en banc), cert. denied, 506 U.S. 1014, 113 S. Ct. 636, 121 L. Ed. 2d 566 (1992); *State v. Gilmore*, 103 N.J. 508, 535, 511 A.2d 1150 (1986); *State v. Wilson*, 117 N.M. 11, 868 P.2d 656, 661 (1993); *People v. Harris*, 151 App. Div. 2d 961, 542 N.Y.S.2d 411 (1989); *State v. Jones*, 293 S.C. 54, 58, 358 S.E.2d 701 (1987); *State v. Peck*, 719 S.W.2d 553, 555 (Tenn. Crim. App. 1986); *Taylor v. State*, 825 S.W.2d 212, 214 (Tex. App. 1992) (by statute).

Apparently, only Indiana and Louisiana courts require a *Batson* claim to be raised at the time that the peremptory challenge is exercised. See *Chambers v. State*, 551 N.E.2d 1154, 1158 (Ind. App. 1990) (provided as alternate ground for decision without analysis); *State v. Aubrey*, 609 So. 2d 1183, 1185 (La. App. 1992) (emphasizing fact that jurors struck early in process may no longer be available). California courts have held that when a struck jury system is used, a party must object before the selection of jurors, including alternate jurors, has been completed; see *People v. Gore*, 18 Cal. App. 4th

rights of both the accused and the excluded venirepersons, consistent with the constraints imposed by [our] jury selection process, guides [our] decision." *State v. Parker*, 836 S.W.2d 930, 935 (Mo.) (en banc), cert. denied, 506 U.S. 1014, 113 S. Ct. 636, 121 L. Ed. 2d 566 (1992). When a sufficient number of venirepersons has been questioned to constitute a jury panel, a defendant will have had access to all information available to support his or her raising of a *Batson* claim. Although in many cases a defendant may have had sufficient information at a point earlier in the voir dire,[13] we are persuaded that it is preferable to create a "bright line test [to] ensure consistency by removing any doubt about when a *Batson* hearing should be conducted." (Internal quotation marks omitted.) *State v. Holloway*, 209 Conn. 636, 646 n.4, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), quoting *State v. Jones*, 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987). Furthermore, to require the claim to be raised at the earliest possible opportunity would create an "arbitrary procedural hurdle" to the vindication of an important constitutional right. See *State v. Parker*, supra, 936.

---

692, 703, 22 Cal. Rptr. 2d 435 (1993); and when a sequential system, like the one used in Connecticut, is used, the claim must be raised at the "earliest possible time" before the jury is sworn. See *People v. Ortega*, 156 Cal. App. 3d 63, 69–70, 202 Cal. Rptr. 657 (1984).

[13] The fact that a *Batson* claim may be raised at any time until the end of voir dire does not, of course, require counsel to wait until that time. In the interest of judicial economy, we urge the parties to raise such claims as soon as they are confident that they have a record that is adequate for the *Batson* claim to be fairly adjudicated.

We are persuaded that it would serve no useful purpose to impose a contemporaneous notice requirement that would deem a *Batson* claim to be waived unless a party alerted the court of the possibility of such a claim immediately after a peremptory challenge had been exercised. If such a requirement were adopted, the path of prudence, to avoid the risk of waiver, would be to alert the court of a possible *Batson* claim after each peremptory challenge. The interests of judicial economy would not be served by such automatic reservations of *Batson* claims.

The rule that we establish today is consistent with the twin goals served by the requirement of a timely objection. Timely objection enables the parties and the trial court (1) to preserve an adequate record for appeal, and (2) to avoid prejudicial error by permitting reconsideration while it is still possible. *State* v. *Patterson*, supra, 230 Conn. 392–93. We address each goal in turn.

The state contends that allowing a defendant to defer raising a *Batson* claim until just before the jury is sworn will increase the difficulty of preserving an adequate record for appellate review because counsel and the trial court may have forgotten details of each individual voir dire. See, e.g., *United States* v. *Dobynes*, 905 F.2d 1192, 1197 (8th Cir.), cert. denied, 498 U.S. 877, 111 S. Ct. 206, 112 L. Ed. 2d 167 (1990). We disagree. We recognize that the parties may need to take detailed notes regarding the circumstances of and their reasons for each peremptory challenge, but we are not persuaded that the burden of such note-taking will be unreasonable. The parties have an opportunity to place on the record, at any time, all information that is reasonably pertinent to potential *Batson* claims. Indeed, if the hearing is held after voir dire has been completed, more information is available to the parties than at any earlier time in the proceeding.

The state further contends that a rule resolving *Batson* claims after the completion of the voir dire is impractical. The state maintains that a juror who has been peremptorily challenged earlier in the voir dire would most likely have been released from jury duty, under our "one-day, one-jury" system, by the time the jury is ready to be sworn.[14] In light of this system, the

[14] Prospective jurors generally serve only one day unless they are called back to complete voir dire or are selected for a jury. General Statutes § 51-238a provides: "Length of term of service as juror. The length of the term of service for jurors shall be one day except that (1) if a juror is impaneled

trial court would have no way of avoiding prejudicial error by reseating a venireperson who had previously been challenged improperly. Adoption of a rule postponing the adjudication of *Batson* claims until the completion of voir dire would, therefore, in the view of the state, require the trial court to delay the trial by dismissing the chosen jurors and the venire, and beginning jury selection anew. In the absence of a showing of prejudice or of bad faith, we are not persuaded that the risk of delay is a sufficient reason to require a defendant to raise a potential *Batson* claim before he or she has access to sufficient information to do so properly.

In summary, we hold that a defendant may object to the state's peremptory challenge on *Batson* equal protection grounds at any time prior to the swearing of the jury. In the present case, because the defendant objected to the state's peremptory challenge of venireperson Spruill before the jury had been sworn, the defendant's objection was timely. The trial court, therefore, improperly failed to hold a hearing on the defendant's *Batson* claim.

Our conclusion that the trial court improperly failed to hold a *Batson* hearing requires us to decide what the proper remedy shall be. There are two alternatives. We could direct a limited remand, ordering the trial court to conduct a hearing now to determine whether the state's peremptory challenge was racially moti-

---

on a jury trial which lasts more than one day, then the term of service shall be the length of that trial or (2) if a juror is administered the voir dire oath and examination of such juror is not completed during that day, then the term of service shall be through the completion of the examination, if the juror is not selected, or the length of the jury trial, if the juror is selected, or (3) if the court otherwise orders, then the term of service shall be such number of days as the court may order."

We note that, on its face, this statute does not preclude a trial court from recalling an improperly challenged juror either for further questioning or for service on the jury "if the court otherwise orders."

vated. See, e.g., *Batson* v. *Kentucky*, supra, 476 U.S. 100; *People* v. *Snow*, 44 Cal. 3d 216, 226–27, 746 P.2d 452, 242 Cal. Rptr. 477 (1987); *Tursio* v. *United States*, 634 A.2d 1205, 1213 (D.C. 1993); *Stanley* v. *State*, 313 Md. 50, 75–76, 542 A.2d 1267 (1988). This is the remedy usually invoked, and it is the remedy provisionally ordered by the Appellate Court. *State* v. *Robinson*, supra, 38 Conn. App. 616. Alternatively, we could reverse the judgment of the Appellate Court and direct it to remand the case to the trial court with direction to set aside the judgment against the defendant and to conduct a new trial on the charges against him.

Under the circumstances of the present case, we conclude that a new trial is the more appropriate remedy. Five years have passed since the voir dire. The state, moreover, did not place its reasons for striking the venireperson on the record at the time of the voir dire. We are persuaded, therefore, that there is "no reasonable possibility that the circumstances surrounding [the voir dire] can be reconstructed fairly . . . ." *Mejia* v. *State*, 328 Md. 522, 541, 616 A.2d 356 (1992) (remanding for limited hearing but noting that trial court may order new trial if it cannot make necessary findings). It is "unrealistic to believe that the prosecutor could now recall in [great] detail his reasons for the exercise of the peremptory [challenge] in issue, or that the trial judge could assess those reasons, as required, which would demand that [she] recall the circumstances of the case, and the manner in which the prosecutor examined the venire and exercised his other challenges."[15]

---

[15] We note that it always would be difficult for a defendant or the state to reconstruct the reasons for challenging a particular venireperson, and for the trial court to evaluate those reasons, even if, as here, a transcript of the voir dire proceedings is available. A prosecutor, when exercising a peremptory challenge to remove a venireperson, "may legitimately [base that decision] not only on answers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror. An impression of the conduct and demeanor of a prospective

(Internal quotation marks omitted.) *People* v. *Snow*, supra, 44 Cal. 3d 227 (six years had elapsed); see, e.g., *Tursio* v. *United States*, supra, 634 A.2d 1211; *People* v. *Scott*, 70 N.Y.2d 420, 426, 516 N.E.2d 1208, 522 N.Y.S.2d 94 (1987) (four years had elapsed; trial judge no longer sat in county; voir dire had not been transcribed). Accordingly, we remand this case for a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial.

In this opinion BERDON, NORCOTT and KATZ, Js., concurred.

CALLAHAN, J., concurring in part, dissenting in part. Although I agree with the majority's conclusion that "a party has timely raised an equal protection objection to the use of a peremptory challenge if that claim is brought to the attention of the trial court before the jury has been sworn," I do not agree that this case, at least initially, should be remanded for a new trial. I believe rather that the appropriate remedy is a remand to the trial court so that the state may attempt to offer a neutral explanation for its challenge of Lisa Spruill. The defendant then may seek to prove by a preponder-

juror during the voir dire may provide a legitimate basis for the exercise of a peremptory challenge. . . . Thus, a prosecutor's explanation that a venireperson was excluded because he or she seemed, for example, inattentive or hostile to the government, if credible, is sufficient. . . . Because challenges are often based on such subtle, intangible impressions, the reasons for exercising the challenges may be quite difficult to remember . . . ." (Citations omitted; internal quotation marks omitted.) *McCrory* v. *Henderson*, supra, 82 F.3d 1247–48. Furthermore, due to the "often subtle reasons for the exercise of peremptory challenges, a court's determination of whether a prosector has used them in a discriminatory fashion will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and an assessment of their credibility. . . . It is nearly impossible for the judge to rule on such objections intelligently" long after the relevant events occurred. (Citations omitted.) Id., 1248.

ance of the evidence that the state's explanation is pretextual. This course has been followed by appellate tribunals time and time again when, for a variety of reasons, the state has failed to state, on the record, its reasons for dismissing particular jurors. *United States v. Joe*, 928 F.2d 99, 103 (4th Cir.), cert. denied, 502 U.S. 816, 112 S. Ct. 71, 116 L. Ed. 2d 45 (1991); *United States v. Davis*, 816 F.2d 433, 434 (8th Cir. 1987), cert. denied, 488 U.S. 832, 109 S. Ct. 88, 102 L. Ed. 2d 64 (1988); *United States v. Allen*, 814 F.2d 977, 978 (4th Cir. 1987); *United States v. Leslie*, 813 F.2d 658, 659 (5th Cir. 1987); *United States v. Chalan*, 812 F.2d 1302, 1314 (10th Cir. 1987); *Ex parte Jackson*, 516 So. 2d 768, 772–73 (Ala. 1986); *Nickerson v. State*, 539 So. 2d 335, 336 (Ala. Crim. App. 1987); *Wright v. State*, 186 Ga. App. 104, 105–106, 366 S.E.2d 420 (1988); *People v. Lockhart*, 201 Ill. App. 3d 700, 715, 558 N.E.2d 1345 (1990); *Love v. State*, 519 N.E.2d 563, 566 (Ind. 1988); *State v. Hood*, 242 Kan. 115, 123, 744 P.2d 816 (1987); *Stanley v. State*, 313 Md. 50, 76–80, 542 A.2d 1267 (1988); *People v. Hart*, 161 Mich. App. 630, 641, 411 N.W.2d 803 (1987); *Harper v. State*, 510 So. 2d 530, 532 (Miss. 1987); *State v. Gonzales*, 111 N.M. 590, 597, 808 P.2d 40 (N.M. App.), cert. denied, 111 N.M. 416, 806 P.2d 65 (1991); *People v. Jenkins*, 75 N.Y.2d 550, 559, 554 N.E.2d 47, 555 N.Y.S.2d 10 (1990). Limited remands consistently have been the chosen course even where, as here, a significant period of time has passed since the voir dire at issue. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (more than two years); *United States v. Tindle*, 808 F.2d 319 (4th Cir. 1986) (more than three years); *Ex parte Jackson*, supra, 772 (five years); *People v. Lockhart*, supra, 703 (four years); *State v. Gorman*, 324 Md. 124, 130–32, 596 A.2d 629 (1991) (six years); *People v. Jenkins*, supra, 559–60 (ten years). I am aware of no case in the country where the passage of time alone was found to be sufficient reason to remand a case for

a new trial without any other circumstance indicating that a limited remand would be futile.[1]

Rather than presuming that an effective *Batson* hearing cannot be conducted despite the fact that the entire voir dire, including that of the sole venireperson in question, has been transcribed fully,[2] I believe that we

---

[1] Each of the three cases cited by the majority in which *Batson*-type cases were remanded for new trials is distinguishable. In *People v. Snow*, 44 Cal. 3d 216, 746 P.2d 452, 242 Cal. Rptr. 477 (1987), the California Supreme Court conducted an independent examination of the record, noting that the trial court had expressed "serious suspicions" about the prosecutor's use of peremptory challenges to exclude six African-American venirepersons; id., 226; and noting the fact that "several [b]lack venirepersons were excused after giving seemingly routine, acceptable responses to the prosecutor's questions." Id., 223. The California attorney general had even conceded on appeal that the record revealed no "apparent" reason for excusing three of the six venirepersons in question. Id. Lastly, at trial, the prosecutor attempted to justify his systematic removal of African-American venirepersons by suggesting that such a practice was fair play because the defendant was systematically excluding Caucasians. Id., 224. In *Tursio v. United States*, 634 A.2d 1205, 1207–1209 (D.C. 1993), the defendant made a motion for a new trial on *Batson* grounds and the prosecution responded with a written account of its reasons for each of the nine peremptory challenges questioned by the defendant. The trial court accepted the prosecutor's explanations and concluded that there had been no *Batson* violation. The District of Columbia Court of Appeals concluded that the trial court had erred in accepting the prosecutor's explanations because "[t]he inherent logic and credibility of the prosecutor's individual explanations as to each stricken venireperson are not sufficient, taken only by themselves, to rebut such a prima facie case of racial discrimination when prospective jurors of several races who appear to be similarly situated—based on their answers to questions during voir dire—are accepted or rejected for jury service by apparent reference to race." Id., 1212. Finally, in *People v. Scott*, 70 N.Y.2d 420, 426, 516 N.E.2d 1208, 522 N.Y.S.2d 94 (1987), the New York Court of Appeals determined that an attempt to conduct a meaningful *Batson* hearing would have been futile because the judge who had tried the case had since left the County Court bench and the voir dire had not been transcribed.

[2] The transcript of Spruill's voir dire reveals a potentially nondiscriminatory reason for the state's exercise of a peremptory challenge. Spruill gave some indication that she might be unwilling to change her mind during deliberations despite any arguments and opinions of other jurors:

"[The State:] Now, how are you [at] interacting with other groups of people? Think you can do that? If you were selected and had to talk to five other people on the jury?

should remand the case to the trial court so that the court may judge the credibility of the state's proferred reason(s) for the use of its peremptory challenge. If, due to the lapse of time, the state is unable to provide a nondiscriminatory reason for excusing Spruill or if it appears to the trial court that the state's reasons are pretextual, the court could then order a new trial. *Mejia* v. *State*, 328 Md. 522, 541, 616 A.2d 356 (1992) ("should it appear that there is no reasonable possibility that the circumstances surrounding the striking of [the venireperson] can be reconstructed fairly, then a new trial may be required and the trial judge may order one"); see *State* v. *Hood*, supra, 242 Kan. 123 (remand for *Batson* arguments "based upon the trial record and

---

"[Lisa Spruill:] Yes.

"Q. Now, suppose five of those people were voting one way regardless of which way it is. And you feel the opposite way. Would you stick to your guns?

"A. Yes.

"Q. Would you try to get them to listen to you?

"A. Yes.

"Q. Would you listen to them?

"A. Yes.

"Q. Would you change your mind based on the mere fact that five people feel differently than you?

"A. No.

"Q. Okay. Would you change your mind if they brought up some testimony or evidence that swayed you?

"A. No.

"Q. You wouldn't change your mind at all?

"A. No, I wouldn't.

"Q. You wouldn't [be] open for discussion?

"A. Open for discussion but I wouldn't change my mind.

"Q. Let's explore this a little further. Suppose you were voting one way and five people voting the opposite way. Now, you listen[ed] to everything that went on. The state's witnesses, the defense witnesses, if any. Now you made up your mind. These five people say, 'What about this?' They brought up something in a different light and they analyze the fact in a different way. Do you think anything they said would make you reconsider and change?

"A. Possibly.

"Q. So you would keep an open mind.

"A. Yes."

counsel's recollection"). Moreover, on remand, the trial court would have the ability to order a new trial if the court feels that it cannot properly evaluate the reasons proffered by the state due to the lapse of time.

In short, I do not believe that we should assume that the record cannot be reconstructed to permit a *Batson* hearing that is fair to both the state and the defendant. To do so seems to me to usurp the trial court's function and to require a costly new trial when such a step may be unnecessary. Despite the lapse of time since the voir dire, the trial court may be fully capable of affording the defendant a proper *Batson* hearing. I would remand the case to the trial court for that determination.